## THE CHARLES RUNYON.

### MORSE v. THE CHARLES RUNYON.

*(District Court, E. D. New York. June 19, 1891.)*

TOWAGE—DUTY OF TUG TO LEAVE TOW IN SAFE BERTH.

A tug left a sound canal-boat at a pier to which the master of the canal-boat objected as unsafe. At low water the canal-boat broke in two. The water was 30 feet deep at the end of the pier. The evidence as to the depth of water at the bows of the canal-boat was conflicting. *Held,* that the evidence of the soundness of the boat, and the fact that she actually broke in two, together with the positive evi-

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

dence of libelant that the water was shallow, placed the weight of evidence as to the unsafe nature of the place with libelant, who was therefore *held* entitled to recover his damages.

In Admiralty. Suit to recover for loss of a canal-boat.

*Anson Beebe Stewart*, for libelant.

*Wing, Shoudy & Putnam*, for claimant.

BENEDICT, J. This is an action to recover of the steam-tug Charles Runyon damages for neglect in respect to the canal-boat Thomas Dobby. On the 13th day of March, 1889, a contract was made by the owners of the tug Charles Runyon to tow the canal-boat Thomas Dobby, loaded with a cargo of coal, from Port Johnson to Barren island. The tug started in the morning with the canal-boat, but after she passed Norton's Point the weather proved so heavy that the tug deemed it prudent to go no further. She accordingly turned back with the canal-boat, and, taking the canal-boat to the north side of the American cotton docks on Staten island, left her there, along-side of the north side of pier No. 1. The place where the canal-boat was left was not a regular slip. It had never been excavated for a slip, but was simply part of the land used by the light-house station at Staten island, which adjoins pier 1 of the cotton docks. At the time the canal-boat was left at that pier, the master of the canal-boat objected to the place as unsafe. The wind' was then high. During the afternoon the master of the canal-boat proceeded to New York, and informed the owners of the tug that the boat was in danger, and requested them to move her to a safe place. They promised to do so in the morning. The master also made unsuccessful efforts to procure another tug to move him to a safe place. The bottom along-side pier 1, where the canal-boat was moored, was a shelving bank, the water being some 30 feet deep at the end of the pier, and shoaling towards the shore. During the night the canal-boat suddenly broke in two and sank, the captain and his wife barely escaping with their lives. For the damage thus resulting this action is brought by the owner of the canal-boat.

No doubt exists as to the obligation of the tug to put the canal-boat in a safe place, when it was found best to turn back, and the ground of the contention in behalf of the canal-boat is that the place where the canal-boat was left was an unsafe place, because of insufficient water under the bows of the canal-boat. Upon the question of the depth of water at that place much testimony has been taken on both sides, and the conflict of testimony is extraordinary. Many witnesses swear that the water was by actual measurement eight and one-half feet at the lowest depth, and on the other side, witnesses who have actually measured it declare that it is not more than three or four feet. In this conflict of testimony as to the depth of water at the place where the boat lay notice must be taken of the undisputed fact that the canal-boat did break in two while lying at this place at low water. The claimant attempted to meet this by testimony going to show a bad condition of the boat. No other explanation has been attempted of the fact that the boat actually broke in two at low water at this place. The weight of the evidence is that the boat was

sound and strong. The sound condition of the boat, the sinking of the boat at low water, taken in connection with the positive evidence on the part of the libelants as to the depth of water, places the weight of the evidence with the libelant. Accordingly, it must be held that the tug-boat left the canal-boat at a place where it was unsafe for her to lie, by reason of which neglect the canal-boat was sunk.

There will therefore be a decree for the libelants, with an order of reference.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.